UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| VANTAGE DEEPWATER COMPANY and VANTAGE DEEPWATER DRILLING, INC., <br><br> *Petitioners,* <br><br> v. <br><br> PETROBRAS AMERICA, INC., PETROBRAS VENEZUELA INVESTMENTS & SERVICES, BV, and PETROLEO BRASILEIRO S.A. – PETROBRAS, <br><br> *Respondents.* | CIVIL ACTION NO. 18-cv-2246 <br><br><br> **PETITION TO CONFIRM ARBITRATION AWARD** |

Petitioners Vantage Deepwater Company and Vantage Deepwater Drilling, Inc. (together, "Vantage"), by and through their undersigned counsel, respectfully submit this Petition to Confirm the Final Award dated June 29, 2018 in the nondomestic contractual arbitration ("Arbitration") between Petitioners and Respondents Petrobras America Inc., Petrobras Venezuela Investments & Services, BV, and Petróleo Brasileiro S.A. – Petrobras (together, "Petrobras") pursuant to the parties' Agreement for the Provision of Drilling Services ("DSA").

## PARTIES

1. Petitioner VANTAGE DEEPWATER COMPANY ("VDEEP") is a company organized and established under the laws of the Cayman Islands, with its registered office at c/o Maples Corporate Services Limited, P.O. Box 309, Ugland House, Grand Cayman, KYI-1104, Cayman Islands.

07214-00001/10235422.2

2. Petitioner VANTAGE DEEPWATER DRILLING, INC. ("VDDI") is a Delaware corporation with its registered office at 777 Post Oak Boulevard, Suite 800, Houston, Texas 77056, United States of America.

3. Respondent PETROBRAS VENEZUELA INVESTMENTS & SERVICES B.V. ("PVIS") is a company organized and established under the laws of the Netherlands, with its registered principal office at Prins Bemhadplein 200, 1097 JB, Amsterdam. PVIS may be served by international registered mail, return receipt requested, at its principal place of business pursuant to Federal Rule of Civil Procedure 4(f) and the Hague Service Convention.

4. Respondent PETROBRAS AMERICA INC. ("PAI") is a Delaware corporation, with its registered office at 10350 Richmond Avenue, Suite 1400, Houston, Texas 77042, United States of America.

5. Respondent PETRÓLEO BRASILEIRO S.A. – PETROBRAS ("Petróleo Brasileiro") is a company organized and established under the laws of Brazil, with its registered office at Avenida Republica de Chile, 330, Rio de Janeiro – RJ, 20031-170, Brazil.

**JURISDICTION AND VENUE**

6. This Petition seeks confirmation of the Final Award dated June 29, 2018 (the "Final Award"), which was rendered in the Arbitration in favor of Petitioners. The "Final Award" is attached as **Exhibit A** to the Declaration of Karl Stern in Support of Petition to Confirm Arbitration Award ("Stern Declaration").

7. This Petition is submitted under Chapter 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 301-307, which provides for the enforcement of the Inter-American Convention on International Commercial Arbitration of January 30, 1975 (the "Inter-American Convention") over the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958

(the "New York Convention") when "a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the Inter-American Convention and are member States of the Organization of American States." *See* 9 U.S.C. § 305.

8. Both the United States (where VDDI and PAI are incorporated) and Brazil (where Petróleo Brasileiro is incorporated) are parties to the Inter-American Convention and are member states of the Organization of American States. Because these parties constitute the majority of the parties to this proceeding, the Inter-American Convention governs.

9. Notwithstanding the above, section 302 of the FAA provides that "[s]ections 202, 203, 204, 205, and 207 of this title [those referring to the New York Convention] shall apply to this chapter as if specifically set forth herein, except that for the purposes of this chapter, 'the Convention' shall mean the Inter-American Convention." 9 U.S.C. § 302. In other words, the Inter-American Convention will apply the abovementioned provisions of the New York Convention without distinction. *See PDF Sweeny, Inc. v. ConocoPhillips Co.*, 2015 WL 5144023, at *4 (S.D.N.Y. Sept. 1, 2015) ("[T]he Inter-American Convention is substantively identical to the New York Convention and applies concomitantly in this case."). Accordingly, all references in the present Petition will be to the relevant sections under Chapter 2 of the FAA and the New York Convention.

10. This Court has subject-matter jurisdiction over this action pursuant to 9 U.S.C. § 202 which in relevant part provides: "An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention." This Court also has subject-matter jurisdiction over this action pursuant to 9 U.S.C. § 203, which provides: "An action or proceeding falling under the Convention shall be deemed to arise under

the laws and treaties of the United States.  The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."

11. This Court has primary jurisdiction over this action because the United States is the country "in which, [and] according to the law of which, the decision has been made."  Inter-American Convention Art. V(1)e); *see also Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 364 (5th Cir. 2003) ("[T]he country in which . . . an award was made is said to have *primary* jurisdiction over the arbitration award.  All other signatory States are *secondary* jurisdictions, in which parties can only contest whether that State should enforce the arbitral award.").

12. Venue is proper in this Court pursuant to section 204 of the FAA, which in relevant part provides: "An action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title may be brought . . . in such court for the district and division which embraces the place designated in the [arbitration] agreement as the place of arbitration if such place is within the United States."

13. This Court has personal jurisdiction over Respondents pursuant to 9 U.S.C. § 9, which provides: "Notice of the application [to confirm the arbitration award] shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding."  This Court also has personal jurisdiction over Respondents by virtue of the fact that the contracts they entered with Petitioners were to be performed, in part, in Texas.  During the course of that performance, Respondents participated in numerous communications with Texas.  *See* Tex. Civ. Prac. & Rem. Code § 17.042(1). In addition,

representatives for each of the Respondents appeared each day at the Arbitration hearing in Houston, Texas.

## FACTUAL BACKGROUND

### The DSA and Underlying Dispute

14.     On February 4, 2009, VEEP and PVIS executed the DSA, under which Vantage agreed to perform offshore drilling services for Petrobras using the ultra-deepwater drilling rig, the Titanium Explorer, for an eight-year term.  Petrobras agreed to pay Vantage a rate of $490,000 per day, plus bonuses and annual escalations.  A copy of the DSA is attached as **Exhibit B** to the Stern Declaration.  Also on February 4, 2009, Petróleo Brasileiro executed a Form of Payment and Performance Guaranty ("Guaranty") in favor of VDEEP.  The Guaranty is "a present and continuing guaranty of performance," under which Petróleo Brasileiro "unconditionally, absolutely and irrevocably guarantee[d]" Petrobras's obligations under the DSA.  A copy of the Guaranty is attached as **Exhibit C** to the Stern Declaration.

15.     The eight-year term of the DSA commenced upon Vantage's delivery and Petrobras's acceptance of the Titanium Explorer, which occurred on December 7, 2012.

16.     On October 27, 2014, Vantage and Petrobras executed the Third Novation and Amendment Agreement to the Agreement for the Provision of Drilling Services ("Third Novation"), under which PVIS novated the DSA to PAI for the purpose of allowing the Titanium Explorer to perform drilling operations in the Gulf of Mexico.  Under the Third Novation, PVIS remained jointly and severally liable with PAI under the DSA.  A copy of the Third Novation is attached to the Stern Declaration as **Exhibit D**.

17.     On August 31, 2015, less than three years into the DSA's eight-year term, and while the Third Novation was still in effect, Petrobras wrongfully terminated the DSA.

18.     The Third Novation provides that any disputes arising under or by virtue of the Third Novation shall be "exclusively and finally resolve[d]" in arbitration before the International Center for Dispute Resolution of the American Arbitration Association ("ICDR") in Houston, Texas.  *See* Third Novation (Ex. D) § 24.2. The Guaranty is also governed by the dispute-resolution provisions of the Third Novation.  *See* Guaranty (Ex. C) § 3.5 (adopting the dispute resolution provisions set out in § 24 of the DSA); Third Novation (Ex. D) § 8.1 (amending dispute resolution provisions in § 24 of the DSA for the duration of the Third Novation).

19.     The Third Novation also provides that "[t]he parties waive irrevocably their right to any form of appeal, review, or recourse to any court or other judicial authority, to the extent that such wavier may be validly made," and that these provisions shall be governed by any construed in accordance with the laws of Texas, USA."  *See* Third Novation (Ex. D) § 24.2.

**The Arbitration Proceedings**

20.     On August 31, 2015, pursuant to the above-referenced arbitration clause in the Third Novation, Vantage filed a Demand for Arbitration in the ICDR.  Vantage requested that the Tribunal award Vantage expectancy damages for that portion of the DSA's eight-year term wrongfully cancelled by Petrobras.  Petrobras responded that the DSA was void or voidable for allegedly being procured through bribery, and that cancellation of the contract was in any event proper due to alleged operational failures by Vantage.

21.     Pursuant to the arbitration clause in the Third Novation, the arbitral tribunal consisted of a neutral Chairperson, Professor William W. Park, and one arbitrator appointed by each party, Judge Charles N. Brower (by Vantage) and Mr. James Gaitis (by Petrobras) (the "Arbitral Tribunal").  Professor Park was selected as Chairperson by Mr. David Keltner (who Vantage's appointed arbitrator before withdrawing due to a conflict) and Mr. Gaitis.

22. After Mr. Keltner withdrew, Petrobras raised a facially implausible challenge, on grounds of bias, to the appointment of Judge Brower as Vantage's replacement arbitrator. After considering the parties' submissions, the ICDR denied the challenge.

23. The parties submitted extensive pre-hearing briefing which included direct testimony from witnesses and documentary evidence.

24. From May 16 through June 1, 2017, the Arbitral Tribunal held a hearing on the merits in Houston, Texas. At the hearing, the parties' witnesses were subject to in-person cross-examination and each side submitted documentary evidence. The parties were represented by counsel, who had the opportunity to examine witnesses, introduce documentary evidence, object to the admission of evidence, and present opening statements and closing arguments.

25. On April 25, 2018, the Arbitral Tribunal issued a procedural order closing the evidentiary stage of the proceedings. On May 20, 2018, the Arbitral Tribunal reopened the proceedings for the limited purpose of admitting and considering a Form 10-Q that Vantage filed with the Securities Exchange Commission on May 4, 2018 and the parties' comments on the same.

26. On June 29, 2018, after reviewing and considering the evidence presented, the witness testimonies, and considering the parties' arguments, the Arbitral Tribunal closed the evidentiary hearing for a second time and issued its Final Award.

**The Final Award**

27. On June 29, 2018, after reviewing and considering the evidence presented, the witness testimonies, and considering the parties' arguments, the Arbitral Tribunal issued its Final Award.

28. In the Final Award, the Arbitral Tribunal awarded Vantage damages in the amount of US$ 615.62 million as of 1 April 2018, to bear interest compounded monthly at a rate of 15.2% and running from 1 April 2018 and through final payment of this Award. *See* Ex. A at 101.

29. The Tribunal also awarded US$ 6.4 million for unpaid invoices, bear interest from 20 October 2015 on US$ 5.2 million, and from 19 November 2015 on US$ 1.2 million, at 15.2% compounded monthly, running until final payment of the awarded sums.

30. The Arbitral Tribunal also awarded Vantage costs and expenses associated with the Vantage arbitration totaling US$ 32,800.02, which is the total amount of Petrobras's unpaid ICDR invoices for the arbitration. *See* Ex. A at 101.

31. Petrobras's appointed arbitrator, Mr. Gaitis, issued a one-page dissent to the award, a true and correct copy of which is attached as **Exhibit E**. The dissent objects on grounds of lack of "fundamental fairness and due process protections," which Mr. Gaitis characterizes as the "generic reasons" why he cannot join the final award, but does not specify the bases for these contentions.

32. The Final Award notes that the majority "carefully considered the Objection to, and Dissent from, the Majority's Final Award, initially provided by Arbitrator Gaitis to his Tribunal colleagues and the AAA immediately following the Chairman's communication of proposed tentative conclusions on jurisdiction, liability and limitation of damages." Ex. A at 100. It goes on to note that "[t]he Chairman and Judge Brower each confirms that he has remained independent and impartial throughout the proceedings. The Chairman and Judge Brower each confirms that the pre-hearing, hearing, and post-hearing processes leading to the issuance of this Final Award have been conducted with full respect for all Parties' rights to fundamental fairness and due process protections meant to be provided to arbitrating parties by Chapters 1, 2 and 3 of the Federal

Arbitration Act. Neither the Chairman nor Judge Brower has noted any evidence that these proceedings denied the Parties fundamental fairness and due process protections." *Id.*

### REQUEST FOR CONFIRMATION OF THE FINAL AWARD

33. The Final Award was made in accordance with the parties' agreement and is proper in all respects. The Final Award arose out of a legal relationship that is commercial in nature and is not entirely between citizens of the United States; thereby falling within the purview of the Inter-American Convention and the New York Convention. *See* U.S.C. § 202.

34. The Final Award was issued in the United States, a nation that is a signatory to both the Inter-American Convention and the New York Convention.

35. There are no grounds to correct or vacate the Final Award. None of the grounds for refusal or deferral of the Final Award set forth in Article V of the Inter-American Convention or Article V of the New York Convention apply.

36. This petition is timely because it is filed within three years after the issuance of the Final Award. *See* 9 U.S.C. § 207.

37. In light of the above, the Final Award should be confirmed pursuant to the Inter-American Convention, the New York Convention, and 9 U.S.C. § 207.

### PRAYER FOR RELIEF

Vantage prays that the Court:

38. Issue an order confirming the Final Award of the Arbitral Tribunal, as authorized by 9 U.S.C. §§ 207, 302;

39. Enter a judgment that confirms the Final Award, holding Petrobras liable to Vantage in the amounts of (1) US$ 615.62 million as of 1 April 2018, bearing interest compounded monthly at a rate of 15.2% and running from 1 April 2018 and through final payment of this Award,

and (2) US$ 6.4 million bearing interest from 20 October 2015 on US$ 5.2 million, and from 19 November 2015 on US$ 1.2 million, at 15.2% compounded monthly, running until final payment of the Award.

40. Awarded Vantage costs and expenses associated with the Vantage arbitration totaling US$ 32,800.02, which is the total amount of Petrobras's unpaid ICDR invoices.

41. Award Vantage its costs in bringing this action, pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure;

42. Award pre-judgment interest from the date of the Final Award of the Arbitral Tribunal until the date it enters judgment confirming the Final Award and post-judgment interest thereafter;

43. Retain jurisdiction over this action, and, pursuant to Rule 69 of the Federal Rules of Civil Procedure, permit any discovery that may be proper to aid in the enforcement of the judgment; and

44. Award Vantage any and all other relief that the Court deems just and proper.

DATED:  July 2, 2018	Respectfully submitted,

           QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: _____
  Karl Stern
  Texas Bar No. 19175665
  karlstern@quinnemanuel.com
  Charles Eskridge
  Texas Bar No. 06666350
  charleseskridge@quinnemanuel.com
  Kate Kaufmann Shih
  Texas Bar No. 24066065
  kateshih@quinnemanuel.com
  711 Louisiana, Suite 500
  Houston, Texas  77002
  Telephone: (713) 221–7000
  Fax: (713) 221–7200

  Tai–Heng Cheng
  taihengcheng@quinnemanuel.com
  *Pro Hac Application Pending*
  51 Madison Avenue, 22nd Floor
  New York, New York 10010
  Telephone :  (212) 849–7000
  Fax :  (212) 849–7100

  Paul J. Dobrowski
  Texas Bar No. 05927100
  pjd@doblaw.com
  Danielle N. Andrasek
  Texas Bar No. 24045410
  dna@doblaw.com
  DOBROWSKI LARKIN & JOHNSON LLP
  4601 Washington Ave. #300
  Houston, Texas 77007

  ATTORNEYS FOR PETITIONERS
  VANTAGE DEEPWATER COMPANY AND
  VANTAGE DEEPWATER DRILLING, INC.