UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| VANTAGE DEEPWATER COMPANY and VANTAGE DEEPWATER DRILLING, INC., <br><br> *Petitioners,* <br><br> v. <br><br> PETROBRAS AMERICA, INC., PETROBRAS VENEZUELA INVESTMENTS & SERVICES, BV, and PETRÓLEO BRASILEIRO S.A. – PETROBRAS, <br><br> *Respondents.* | CIVIL ACTION NO. 18-cv-2246 |

**PETITIONERS' RESPONSE IN OPPOSITION TO
RESPONDENTS' MOTION FOR LEAVE TO SERVE A SUBPOENA
IN SUPPORT OF THEIR MOTION TO VACATE THE MAJORITY AWARD**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. FACTUAL BACKGROUND...................................................................................2

    A. Petrobras agreed in the DSA that Mr. Gaitis could not be deposed ........................2

    B. Consistent with his typical practice, Mr. Gaitis issued a generic, one-paragraph dissent and refused to sign the Final Award ...........................................3

III. LEGAL STANDARD.............................................................................................4

IV. ARGUMENT ........................................................................................................5

    A. Petrobras contractually waived any ability to obtain discovery from Mr. Gaitis.......................................................................................................................6

    B. There is no evidence of impropriety, let alone the specific, clear evidence required to support discovery...................................................................................7

        1. Petrobras's complaints about the arbitration are not evidence of impropriety.................................................................................................7

        2. The Dissent is not evidence of impropriety ...............................................11

        3. Petrobras's cases do not support a deposition here....................................14

V. RESERVATION OF RIGHTS ...............................................................................16

VI. PRAYER FOR RELIEF .......................................................................................17

## TABLE OF AUTHORITIES

### CASES

*Carolina-Virginia Fashion Exhibitors, Inc. v. Gunter*,
  291 N.C. 208 (N.C. 1976) .................................................. 16

*Central Union Stock Yards Co. v. Uvalde Asphalt Paving Co.*,
  87 A. 235 (N.J. Ch. 1913) ................................................. 16

*Continental Bank Supply Company v. International Brotherhood of Bookbinders*,
  201 S.W.2d 531 (Mo. App. 1947) ........................................ 16

*El Paso Elec. Co. v. Int'l Bhd. of Elec. Workers, Local No. 960*,
  2012 WL 12881997 (W.D. Tex. Jan. 9, 2012) ......................... 9, 10

*Fairchild & Co. v. Richmond, Fredericksburg & Potomac R.R. Co.*,
  516 F. Supp. 1305 (D.D.C. 1981) ......................................... 8

*Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas*,
  915 F.2d 1017 (5th Cir. 1990) ............................................ 10

*Fort Hill Builders, Inc. v. National Grange Mutual Insurance Co.*,
  866 F.2d 11 (1st Cir. 1989) ............................................... 8

*Fukaya Trading Co., S.E. v. E. Marine Corp.*,
  322 F. Supp. 278 (E.D. La. 1971) ........................................ 15

*Grudem Bros. Co. v. Great Western Piping Corp.*,
  297 Minn. 313 (Minn. 1973) ............................................... 16

*Hunt v. Mobil Oil Corp.*,
  654 F. Supp. 1487 (S.D.N.Y. 1987) .................................... 5, 11

*Imbruce v. Am. Arbitration Ass'n, Inc.*,
  2016 WL 5339551 (S.D.N.Y. Sept. 23, 2016) .......................... 6

*In re Subpoenas Issued to Albert*,
  2017 WL 4976443 (E.D.N.C. Nov. 1, 2017) ............................ 5

*InfoBilling, Inc. v. Transaction Clearing, LLC*,
  2013 WL 1501570 (W.D. Tex. 2013) ..................................... 15

*Legion Ins. Co. v. Ins. Gen. Agency, Inc.*,
  822 F. 2d 541 (5th Cir. 1987) ............................................. 4

*Lummus Global Amazonas S.A. v. Aguaytia Energy del Peru, S.R. LTDA.*,
  256 F. Supp. 2d 594 (S.D. Tex. 2002) ............................. 4, 5, 8, 11

*Meer Corp. v. Farmella Trading Corp.*,
  178 N.Y.S.2d 784 (N.Y. Sup. Ct. 1958) ................................. 16

*Midwest Generation EME, LLC v. Continuum Chem. Corp.*,
    768 F. Supp. 2d 939 (N.D. Ill. 2010) ............................................................................ 4, 5

*Motor Expressmen's Union v. Mistletoe Exp. Serv.*,
    462 F. Supp. 143 (N.D. Tex. 1978) ........................................................................ 9, 10

*Nalco Co., Inc. v. Baker Hughes Inc.*,
    2017 WL 3033997 (S.D. Tex. 2017) ...................................................................... 10

*Ometto v. ASA Bioenergy Holding A.G.*,
    No. 12-cv-1328, Dkts. 9 (S.D.N.Y. 2012) .......................................................... 15

*Ponderosa Pine Energy, LLC v. Tenaska Energy, Inc.*,
    376 S.W.3d 358 (Tex. App.—Dallas 2012), *rev'd* 437 S.W.3d 518 .............................. 15

*Positive Software Solutions, Inc. v. New Century Mort. Corp.*,
    476 F.3d 278 (5th Cir.2007) ............................................................................. 4

*Rodas v. La Madeleine of Texas, Inc.*,
    2015 WL 1611780 (Tex. App.—Dallas 2015, pet. denied) ........................................... 15

*Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*,
    437 S.W.3d 518 (Tex. 2014) ............................................................................. 15

*TransAtlantic Lines LLC v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc.*,
    253 F. Supp. 3d 725 (S.D.N.Y. 2017) ............................................................... 5

*Upjohn v. United States*,
    449 U.S. 383 (1981) ........................................................................................ 10

*Van Pelt v. UBS Fin. Servs.*,
    2006 WL 1698861 (W.D.N.C. June 14, 2006) ...................................................... 5

*William C. Vick Constr. Co. v. North Carolina Farm Bureau Fed.*,
    123 N.C. App. 97 (N.C. Ct. App. 1996) ............................................................ 16

## STATUTES

9 U.S.C. § 301 ........................................................................................................... 3

9 U.S.C. §§ 10(a)(1), (2), (3), (4) ........................................................................... 3

## OTHER AUTHORITIES

AAA Code of Ethics, Canon VI(c) ...................................................................... 2, 6

AAA Rule 52 ............................................................................................................. 4

AAA Rule 52(e) ......................................................................................................... 2

Petitioners Vantage Deepwater Company and Vantage Deepwater Drilling, Inc. (together, "Vantage") respectfully submit this Opposition to Respondents Petrobras America Inc., Petrobras Venezuela Investments & Services, BV, and Petróleo Brasileiro S.A. – Petrobras (together, "Petrobras") Motion for Leave to Serve a Subpoena in Support of their Motion to Vacate the Majority Award ("Motion"), Dkt. 66.[1]

## I. <u>INTRODUCTION</u>

By its request to serve a subpoena on its party-appointed arbitrator, James M. Gaitis, Petrobras seeks to breach its contractual commitment to be bound by American Arbitration Association ("AAA") rules prohibiting arbitrator testimony, invade the confidential, quasi-judicial deliberations of the arbitrators, and bog down this summary proceeding in discovery that is granted only in the most unusual of circumstances—circumstances that do not exist here. Petrobras has not pointed to the type of specific, clear evidence of impropriety required to obtain post-arbitration discovery targeted at an arbitrator. Instead, it relies on rank speculation, innuendo, and mischaracterizations of the record. Petrobras has not cited a single case that permitted the type of discovery it seeks here.

Mr. Gaitis's generic, one paragraph dissent, Dkt. 1-7 (Stern Decl., Ex. E) ("Dissent"), does not justify his deposition. Mr. Gaitis sat on a panel with two of the world's most distinguished international arbitrators. If he had actually observed anything improper by either of them in these proceedings, Mr. Gaitis had every opportunity to say so in his Dissent. That Mr. Gaitis chose not to do so speaks volumes. The case law does not allow, and this Court should not permit, Petrobras to leverage Mr. Gaitis's one-paragraph Dissent—which does not identify even *one* specific

---

[1] All references to the Motion are to the version filed in redacted form at Dkt. 66. The unredacted version is filed under seal at Dkt. 47.

instance of alleged impropriety—into an opportunity to delay this proceeding with invasion of the sacrosanct confidentiality of arbitral deliberations.

## II.  FACTUAL BACKGROUND

The complete factual background for this dispute is set forth in Vantage's Omnibus Brief in Support of Petition to Confirm and in Opposition to Petrobras's Motion to Vacate ("Omnibus Brief"), Dkt. 69 § II, which is incorporated by reference as if fully set forth herein.

### A.  Petrobras agreed in the DSA that Mr. Gaitis could not be deposed

The governing arbitration clause required the application of the AAA's Commercial Arbitration Rules ("AAA Rules").[2]  AAA Rule 52(e) squarely provides that parties may not call an arbitrator as a witness and that arbitrators are not competent to testify in subsequent litigation:

> Parties to an arbitration under these rules may not call the arbitrator, the AAA, or AAA employees as a witness in litigation or any other proceeding relating to the arbitration.  The arbitrator, the AAA and AAA employees are not competent to testify as witnesses in any such proceeding.

Shih Decl., Ex. G (AAA Rule 52(e)).

Canon VI(c) of the AAA Code of Ethics for Arbitrators in Commercial Disputes ("AAA Code of Ethics") similarly provides that an arbitrator may not assist subsequent litigation:  "After an arbitration award has been made, it is not proper for an arbitrator to assist in proceedings to enforce or challenge the award."  Shih Decl., Ex. E, AAA CODE OF ETHICS FOR ARBITRATORS IN COMMERCIAL DISPUTES, Canon VI(c).

---

[2]  The arbitration was conducted pursuant to the parties' agreement under the Agreement for the Provision of Drilling Services ("DSA") dated February 4, 2009.  *See* Dkt. 1, Stern Decl., Ex. B.  The Third Novation and Amendment Agreement to the DSA ("Third Novation") was the operative version of the DSA at the time the dispute arose, and governed the arbitration proceedings.  *Id.*, Ex. D.  Section 8.1 of the Third Novation called for the application of the AAA Rules.  *Id.* § 8.1.

**B.** **Consistent with his typical practice, Mr. Gaitis issued a generic, one-paragraph Dissent and refused to sign the Final Award**

The 101-page Final Award was issued by two of the world's most eminent and respected international arbitrators. *See* Dkt. 1-3 (Stern Decl., Ex. A) ("Final Award"). In 539 numbered paragraphs, the Final Award contains lengthy and detailed recitations of the parties' respective positions and meticulously sets forth the Majority's factual findings and legal conclusions. *See id.*

Mr. Gaitis responded to the Final Award with a one-paragraph Dissent, consisting of two sentences and a footnote. The body of the Dissent reads:

> I object to, and I dissent from, the tribunal majority's Final Award. This Objection and Dissent is based not only on my differing conclusions regarding the merits of the dispute, but also on my belief and conclusion that the prehearing, hearing, and posthearing processes that led to the issuance of the Final Award have denied Respondents in this proceeding the fundamental fairness and due process protections meant to be provided to arbitrating parties by Sections 10(a)(1), 10(a)(2), 10(a)(3), 10(a)(4), and Chapters 2 and 3 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

Dissent at 1.

The footnote explains that the Dissent "is intended simply to generally advise the parties of the generic reasons why I cannot join in the final award." *Id.* n.1. Mr. Gaitis states that he has "long endorsed" this approach as a matter of his usual practice. The word "generic" is an appropriate descriptor for the Dissent, which broadly insinuates, without a single, specific detail, that the Final Award is infirm under each and every provision that could possibly apply in these proceedings as to vacatur under the FAA, 9 U.S.C. §§ 10(a)(1), (2), (3), (4), or enforcement of awards under the Panama Convention, 9 U.S.C. § 301 *et seq.*

Mr. Gaitis did not sign the Final Award. *See* Final Award at 102. In an arbitration treatise that he edited, Mr. Gaitis states that it is his standard practice not to sign an award with which he disagrees. *See* Shih Decl., Ex. O, College of Commercial Arbitrators, GUIDE TO BEST PRACTICES

IN COMMERCIAL ARBITRATION (4th ed., Gaitis ed.) at 322 ("A dissenting opinion is not part of the final award, which should be signed only by those arbitrators who agree to the reasoning and findings contained in the award.").

### III.   <u>LEGAL STANDARD</u>

"Post-arbitration discovery is rare, and courts have been extremely reluctant to allow it. It is often a 'tactic' employed by disgruntled or suspicious parties who, having lost the arbitration, are anxious for another go at it." *Midwest Generation EME, LLC v. Continuum Chem. Corp.*, 768 F. Supp. 2d 939, 943 (N.D. Ill. 2010); *accord Lummus Global Amazonas S.A. v. Aguaytia Energy del Peru, S.R. LTDA*, 256 F. Supp. 2d 594, 626 (S.D. Tex. 2002) (Rosenthal, J.) ("*Lummus*").  The Federal Arbitration Act "narrowly restricts judicial review of arbitrators' awards." *Positive Software Solutions, Inc. v. New Century Mort. Corp.*, 476 F.3d 278, 280 (5th Cir. 2007) (en banc). Arbitration confirmation and vacatur proceedings are quite limited in nature to effectuate the national policy favoring arbitration, and they require "expeditious and summary hearing, with only restricted inquiry into factual issues." *Legion Ins. Co. v. Ins. Gen. Agency, Inc.*, 822 F. 2d 541, 543 (5th Cir. 1987).  "[T]he liberality that normally attends discovery in civil litigation is not appropriate in this context." *Lummus*, 256 F. Supp. 2d at 626 (internal quotations omitted).

Discovery from arbitrators is rarer still.  AAA Rule 52 controls the inquiry here.  By its terms, arbitrators are "not competent to testify as witnesses in any proceeding," and Rule 52 explicitly prohibits the parties from taking arbitrator testimony. Shih Decl., Ex. G (AAA Rule 52). Even in actions not controlled by AAA Rules, and with only a handful of exceptions, "[c]ourts have repeatedly condemned efforts to depose members of an arbitration panel to impeach or clarify their awards." *Legion Ins. Co. v. Ins. Gen. Agency, Inc.*, 822 F.2d 541, 543 (5th Cir. 1987); *see also Midwest Generation*, 768 F. Supp. 2d at 943–44 ("Not surprisingly requests to take discovery of arbitrators have been repeatedly condemned.").

In *Lummus*, Chief Judge Rosenthal observed that "any inquiry that is targeted at the arbitrator is particularly suspect, since the arbitrator's coerced involvement in post-award litigation will inevitably intrude upon the arbitrator's quasi-judicial function and discourage qualified individuals from offering their services as arbitrators." 256 F. Supp. 2d at 626.[3]  Accordingly, she cited with approval cases requiring that the party seeking discovery must come forward with specific, "clear evidence of impropriety." *Id.* at 626–28.  Broad, generic insinuations of the type present in the Dissent will not do.[4]  "[O]nly non-speculative, reasonably certain evidence of impropriety will suffice to allow post-arbitration discovery." *Midwest Generation*, 768 F. Supp. 2d at 945. "A constant drumfire of charges, lacking factual support, does not warrant granting . . . the taking of depositions of the arbitrators or [] an evidentiary hearing." *Hunt v. Mobil Oil Corp.*, 654 F. Supp. 1487, 1495 (S.D.N.Y. 1987).  The test for whether specific, clear evidence of impropriety has been established is an objective one. *Midwest Generation*, 768 F. Supp. 2d at 945.

## IV.  ARGUMENT

The Motion should be denied for two reasons.  First, the Parties agreed under the DSA that the AAA Rules and Code of Ethics would govern these proceedings, both of which provide that

---

[3]  The arbitration in *Lummus* was not conducted under the AAA Rules, so Chief Judge Rosenthal was not faced with the question whether Rule 52 entirely foreclosed the requested discovery.

[4]  *See*, *e.g.*, *In re Subpoenas Issued to Albert*, 2017 WL 4976443, at *2 (E.D.N.C. Nov. 1, 2017) (refusing to order discovery from arbitrator because arbitrator's inadvertently undisclosed professional relationship with one of the parties was not "clear evidence" of impropriety sufficient to obtain discovery into possible additional sources of bias); *Van Pelt v. UBS Fin. Servs.*, 2006 WL 1698861, at *2 (W.D.N.C. June 14, 2006) (refusing to order discovery from arbitrator in employment termination case because arbitrator's failure to disclose whether his terination from employment was voluntary or involuntary was not "clear evidence of impropriety" necessary to justify obtaining discovery from that arbitrator); *TransAtlantic Lines LLC v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc.*, 253 F. Supp. 3d 725 (S.D.N.Y. 2017) (refusing to order discovery from panel where almost all purported bases for discovery were "purely speculative"; "[i]n order to take discovery from the ADR panel itself, a litigant must present 'clear evidence of impropriety,' such as bias or corruption").

the parties may not call arbitrators to testify as fact witnesses or otherwise give evidence in subsequent litigation. Second, even if Petrobras were not contractually foreclosed from seeking discovery from Mr. Gaitis, it has failed to present any threshold showing, let alone clear evidence, of impropriety.

### A.  Petrobras contractually waived any ability to obtain discovery from Mr. Gaitis

The DSA is a private contract between sophisticated parties and defines the parameters of the parties' agreement to arbitrate. Under the DSA, Petrobras agreed that the AAA Rules would apply to the present dispute. *See* Dkt. 1-6 (Stern Decl., Ex. D) ("Third Novation") §§ 8.1, 24.2. AAA Rule 52(e) thus binds Petrobras and provides that "Parties to an arbitration under these rules may not call the arbitrator . . . as a witness in litigation or any other proceeding relating to the arbitration. The arbitrator . . . [is] not competent to testify as [a] witness[] in any such proceeding."

The AAA Rules are accompanied by a Code of Ethics for arbitrators operating under the AAA Rules. Petrobras's purported expert, Mr. Newman, confirms that the Code of Ethics governs the arbitrators' conduct in these proceedings. *See* Dkt. 53-2 (Newman Decl.) ¶ 30. Canon VI(c), like Rule 52(e), confirms that Mr. Gaitis is not permitted to give evidence in these proceedings: "After an arbitration award has been made, it is not proper for an arbitrator to assist in proceedings to enforce or challenge the award." AAA Code of Ethics, Canon VI(c) (emphasis added).

Petrobras's attempt to seek post-arbitration discovery from Mr. Gaitis violates the AAA Rules and Code of Ethics—and, of equal importance, Petrobras's own contractual promise to Vantage to abide by them. "Where parties have agreed to be bound by the rules of an arbitral organization, courts have enforced similar rules to bar claims against arbitrators and sponsoring organizations." *Imbruce v. Am. Arbitration Ass'n, Inc.*, 2016 WL 5339551, at *3 (S.D.N.Y. Sept. 23, 2016). For this reason alone, the Motion should be denied.

**B.** **There is no evidence of impropriety, let alone the type of specific, clear evidence required to support discovery**

Even if Petrobras were not contractually barred, there would still be no basis for Petrobras to depose or otherwise seek discovery from Mr. Gaitis, because Petrobras has not identified a shred of specific, clear, non-speculative evidence suggesting impropriety in these proceedings.

1. **Petrobras's complaints about the arbitration are not evidence of impropriety**

None of Petrobras's laundry list of grievances remotely demonstrate "evident partiality and misconduct by the Majority," as Petrobras contends. Dkt. 66 at 4. Its grievances fall into four basic categories: (1) Judge Brower's attitude towards Petrobras's counsel; (2) the nature and tenor of Judge Brower's questioning; (3) a handful of the Tribunal's evidentiary rulings; and (4) the fact that the Majority did not specifically confirm in the Final Award that they remained "neutral" when they confirmed that they had "remained independent and impartial." *See id.* As discussed below and more fully in the Omnibus Brief, none of the complained-of issues are evidence of impropriety at all—let alone the type of specific, clear evidence of impropriety required to obtain post-hearing discovery targeted at arbitrators.

(a) Judge Brower's supposed attitude regarding Petrobras's counsel raises no question of impropriety

Petrobras submits a declaration by its arbitration counsel, Andrew Derman, alleging that Judge Brower "belittled Petrobras's counsel" by supposedly making remarks (not reflected on the transcript of proceedings) like "ridiculous," "asked and answered," and "already been talked about." *See* Dkt. 66 at 4 (citing Dkt. 53-1 (Derman Decl.) ¶¶7-8). Because Petrobras did not make contemporaneous objections to the supposed comments, it is now impossible to now know what (if anything) was actually said, when it was said, or in what context it was said. Instead, Petrobras must rely on Derman's subjective characterizations. Such characterizations by counsel are the

type of "remote, uncertain [and] speculative" evidence the courts have held insufficient to establish actual bias.[5]

Even taken as true, these alleged comments would not be evidence of impropriety. In essence, all Derman is saying is that Judge Brower expressed skepticism about Petrobras's counsels' questions and positions and frustration with repetitive questions. *See* Dkt. 53-1 (Derman Decl.) ¶¶ 7-8. The courts consistently hold that there is nothing improper about such comments. As Chief Judge Rosenthal recognized in *Lummus*, "after a judge or arbitrator has heard considerable testimony, he will have some view of the case." 256 F. Supp. 2d at 629. Moreover, "[a]n arbitrator's legitimate efforts to move the proceedings along expeditiously may be viewed as abrasive or disruptive to a disappointed party. Nevertheless such displeasure does not constitute grounds for vacating an arbitration award." *Id.* Indeed, Chief Judge Rosenthal cited with approval *Fort Hill Builders, Inc. v. National Grange Mutual Insurance Co.*, 866 F.2d 11, 13 (1st Cir. 1989), which held that "an arbitrator's alleged interruptions and interjections of comments or explanations favorable to [one party] or hostile to [the other party] to the point where [that party's] lawyer felt he was facing an adversary" do not establish evident partiality. *Id.*

        (b)    <u>The nature and tenor of questioning raise no question of impropriety</u>

There is nothing improper about the fact that Judge Brower asked pointed or clarifying questions of certain Petrobras witnesses. In *Lummus*, Chief Judge Rosenthal recognized that it is entirely appropriate for an arbitrator to question witnesses "vigorously." 256 F. Supp. 2d at 628-

---

[5] *See Fort Hill Builders, Inc. v. Nat'l Grange Mut. Ins. Co.*, 866 F.2d 11, 14 (1st Cir. 1989) ("[C]onclusory allegations as to [the arbitrator's] interruptions, comments, manifestations of opinion, and 'evident partiality' were insufficient to create any genuine issue of material fact."); *Fairchild & Co. v. Richmond, Fredericksburg & Potomac R.R. Co.*, 516 F. Supp. 1305, 1313 (D.D.C. 1981) ("a disappointed party's perception of rudeness on the part of an arbitrator is not the sort of 'evident partiality' contemplated by the Act as grounds for vacating an award.").

29 (finding no evident partiality where "each of the panel members asked questions of the witnesses, often vigorously," and "[t]he transcript shows that a number of participants interrupted, questioned, and commented").[6]  Indeed, the 93 minutes of questioning of which Petrobras now complains, Dkt. 66 at 4, was something that Petrobras's counsel *specifically invited*.  *See* Dkt. 53-3 (Katz Decl.), Exs. 1-12 ("Tr.") 131:2-4 ("I encourage you to ask a bunch of questions, reach your own conclusion, see what you think about his credibility.").  Both Chair Park and Mr. Gaitis extensively questioned this witness, too.[7]

       (c)      The Tribunal's evidentiary decisions raise no question of impropriety

Equally baseless is Petrobras's assertion that  certain of the Tribunal's evidentiary rulings with which Petrobras disagrees—some of which were *unanimous*—are  evidence of impropriety.  This is an improper attack on decisions squarely within the arbitrators' discretion.  These decisions are not subject to review by this Court, which must defer to the arbitrators' evidentiary rulings even if it thinks they were wrong.[8]

---

     [6]  *See* Declaration of John Fellas, Dkt. 70 ("Fellas Decl.") ¶ 116 ("It is common practice in international arbitration proceedings for arbitrators to explore the issues raised by the pre-hearing submissions through comments and questions of counsel, witnesses or experts . . . [A]ctive questioning of witnesses and expressions of opinion regarding the relative merits of the parties' cases are more acceptable in an arbitration than they would be in a U.S. courtroom." (internal quotations omitted)); *id.* ¶117 ("[I]t is well-recognized in the field of international arbitration that there is no one uniform way to ask questions or make comments.").

     [7]  In particular, Chair Park and Mr. Gaitis also questioned Padilha extensively.  Chair Park asked questions on 27 pages of the transcript. *See* Tr. 1369:13–1370:22; 1405:16–1406:1; 1435:9–1436:15; 1465:15–1467:2; 1486:13–1487:19; 1499:14–1502:6; 1505:2–1506:5; 1540:2–6; 1572:6–14 (Park).  Mr. Gaitis's questions appear on 16 pages of the transcript. *Id.* 1503:25–1505:1; 1506:6–14; 1575:20–1586:15 (Gaitis); *see also* Omnibus Brief § V.A.2.b.

     [8]  *See El Paso Elec. Co. v. Int'l Bhd. of Elec. Workers, Local No. 960*, 2012 WL 12881997, at *4 (W.D. Tex. Jan. 9, 2012) ("[I]t is solely within the Arbitrator's discretion to weigh and evaluate the evidence"); *Motor Expressmen's Union v. Mistletoe Exp. Serv.*, 462 F. Supp. 143, 145 (N.D. Tex. 1978) ("It was the Arbitrator's duty to weigh all the evidence presented, including post-

In any event, the rulings at issue were legally *correct*.  The Tribunal's *unanimous* ruling that Petrobras could question Vantage's Chief Operating Officer about the contents of a non-privileged report submitted to the government and the facts disclosed in that report—but not about privileged conversations that the witness had with Vantage's counsel in preparing the report, *see* Tr. 294:24-295:5—is fully consistent with the law in this circuit.[9]  Petrobras also has no basis to assert that the Majority "ignore[d]" and "bur[ied]" evidence that Vantage's Chief Operating Officer "had a financial interest in the arbitration.  *See* Dkt. 53 at 25.  When the witness testified that he was not aware of an incentive plan that, as Petrobras contended, gave him an interest in the arbitration, Petrobras made no effort to impeach him with its supposed evidence that such a plan existed and offered no evidence that the witness actually knew of such a plan.  *See* Dkt. 53 at 26 n.24, Tr. 343:24-344:6.  The Tribunal was free to give that evidence whatever weight it deemed appropriate, and there is no basis for this Court to re-weigh that evidence here.[10]

        (d)       The Tribunal's express confirmation of impartiality raises no question of impropriety

Petrobras complains that although Judge Brower confirmed that he had "remained independent and impartial," he did not confirm that he had remained "neutral."  Dkt. 66 at 5.  This

---

hearing briefs, in order to reach his decision.  Such examination of all the evidence by an arbitrator is perfectly allowable.").

[9]  *See Nalco Co., Inc. v. Baker Hughes Inc.*, 2017 WL 3033997, at *2 (S.D. Tex. 2017) (citing *Upjohn v. United States*, 449 U.S. 383, 394-95 (1981)).

[10]  *See El Paso Elec. Co.*, 2012 WL 12881997, at *4; *Motor Expressmen's Union*, 462 F. Supp. at 145; *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas*, 915 F.2d 1017, 1023 (5th Cir. 1990) (rejecting claim for vacatur based on arbitrators' alleged failure to consider evidence when arbitrators' interpretation of underlying contract made that evidence irrelevant because "[i]f the arbitrators' decision rests on an adequate basis, then complaints that the panel failed to address all issues presented will not render the proceedings 'fundamentally unfair' or justify disturbing the award.").

should be dismissed out of hand.  Under the rules that applied in this arbitration, these terms are synonymous.  *See* Shih Decl., Ex. E, AAA CODE OF ETHICS IN COMMERCIAL ARBITRATION, Note on Neutrality, at 2 ("The sponsors of this Code believe that it is preferable for all arbitrators including any party-appointed arbitrators to be ***neutral, that is, independent and impartial***, and to comply with the same ethical standards.") (emphasis added).[11]

(e)    The record is sufficient to assess Petrobras's complaints

Finally, even if any of Petrobras's complaints about the proceedings had any merit—and they do not—each can and should be assessed from the record of these proceedings.  Where, as here, "the record is adequate to permit this court to decide the issues presented," post-arbitration discovery is unwarranted.  *Lummus*, 256 F. Supp. 2d at 627; *see also Hunt v. Mobil Oil Corp.*, 654 F. Supp. 1487, 1496 (S.D.N.Y. 1987) (denying post-arbitration discovery where record provided adequate factual basis to decide motion).

2.    **The Dissent is not evidence of impropriety**

Mr. Gaitis's one-paragraph Dissent does not support Petrobras's request for discovery.  By its own terms, the Dissent is "generic" and provides no explanation or statement of facts that would support the sweeping and conclusory assertion that Petrobras was denied "fundamental fairness and due process protections."  Dissent at 1 n.1.  The Dissent itself is not an arbitration award, and therefore is not subject to the type of deference that must be accorded such an award.[12]  To the contrary, it is nothing more than a conclusory statement by Mr. Gaitis.

---

[11]    *See* Fellas Decl. ¶ 89 ("[T]he Code of Ethics equates the requirement that an arbitrator be 'neutral' with the requirement that he or she be 'independent and impartial.'").

[12]    *See* Shih Decl., Ex. O, College of Commercial Arbitrators, GUIDE TO BEST PRACTICES IN COMMERCIAL ARBITRATION (4th ed., Gaitis ed.) at 322 ("A dissenting opinion is not part of the final award.").

Moreover, Petrobras's efforts to use Mr. Gaitis's failure to explain or back up his conclusory statements in the Dissent as grounds for taking discovery would result in a perversion of the arbitration process and, indeed, would encourage abuse by unscrupulous party arbitrators in future proceedings. International arbitration scholars view dissents as having limited utility, but recognize they may be potentially useful when they give the majority the opportunity to address the dissenter's arguments and possibly change substantive rulings. Even in situations involving disagreements regarding process, a reasoned dissent gives the majority an opportunity to take steps to remedy the procedural concerns.[13] A reasoned dissent "help[s] ensure that the majority opinion deals with the most difficult issues confronting it," and helps to ensure "quality resolution of" the dispute.[14] To serve either purpose, a dissent must be well-reasoned and shared with the majority prior to finalization of the award.[15] Here, by submitting a dissent that was not reasoned at all, much less well reasoned, Mr. Gaitis deprived the majority of the opportunity to address any issues he may have had in mind.[16]

Since Mr. Gaitis clearly did not write the Dissent to assist the Majority in improving the Final Award, it serves no legitimate purpose. Scholars find it troubling that virtually all dissents

---

[13] *See* Shih Decl., Ex. S, Richard M. Mosk & Tom Ginsburg, *Dissenting Opinions in International Arbitration*, 15-4 MEALEY'S INT'L ARB. REP. 16 (2000) at 23; *see also* Fellas ¶¶ 31-43.

[14] *See* Shih Decl., Ex. S, Mosk & Ginsburg at 23.

[15] *Id.* ("To play this role of ensuring a quality award by the majority, it is important that wherever possible, dissenters circulate their opinions to the majority before the issuance of the majority award, as is done in the American appellate system and at the International Court of Justice.").

[16] Even though it could not respond to any specific grounds, the Majority did respond to the Dissent, affirming that the Arbitration was "conducted with full respect for all Parties' rights to fundamental fairness and due process protections meant to be provided" under the FAA and that "[n]either the Chairman nor Judge Brower has noted any evidence that these proceedings denied the Parties of fundamental fairness and due process protections." Final Award ¶ 529.

in international arbitrations are issued by the arbitrator appointed by the losing party, as happened here.[17]   At best, such dissents are viewed as efforts by arbitrators appointed by a losing party to placate the disappointed party that appointed them.   At worst, there are concerns that party-appointed arbitrators are trying to concoct grounds for protracted litigation over the enforcement of awards where none would otherwise exist.[18]  Mr. Gaitis acknowledges this very fact in a book that he edited.[19]

Along with its purported expert, Petrobras resorts to rank speculation about what Mr. Gaitis was thinking in issuing the Dissent.  For example, Petrobras urges that his  refusal to sign the Final Award was "virtually unprecedented" and was intended to "emphasize" his "rejection . . . of the process by which the Majority Award was made."  Dkt. 66 at 7 (citing Dkt. 53-2 (Newman Decl.) ¶ 25).  Such mind reading is not evidence, much less clear evidence of impropriety.  Moreover, it is demonstrably wrong.  Far from being unprecedented, Mr. Gaitis states in a book that he edited that a dissenting arbitrator should never sign the award.[20]

---

[17]   *See* Shih Decl., Ex. R, C. Mark Baker & Lucy Greenwood, *Dissent—But Only if You REALLY Feel You Must*, 7 DISPUTE RESOLUTION INT'L 31, 34-35 (2013) at 32 ("[N]early 100 percent of [arbitral] dissents favor the party that appointed the dissenter."); Ex. Q Albert Jan van den Berg, *Dissenting Opinions by Party-Appointed Arbitrators in Investment Arbitration*, LOOKING TO THE FUTURE:  ESSAYS ON INTERNATIONAL LAW IN HONOR OF W. MICHAEL REISMAN, 821, 824 (Martinus Nijhoff 2010) at 824.

[18]   *See* Ex. R, Baker & Greenwood at 32 ("[D]issents can offer an easy way out for the party-appointed arbitrator, a way to stifle deliberations and a means to encourage a challenge to the award."); Ex. U, Alan Redfern, *The 2003 Freshfields – Lecture Dissenting Opinions in International Commercial Arbitration:  The Good, the Bad and the Ugly*, 20 ARBITRATION INT'L 223 (2004) at 234 ("[C]ertain arbitrators, so as not to lose the confidence of the company . . . which appointed them, will be tempted, if they have not put their point of view successfully in the course of the tribunal's deliberation, systematically to draw up a dissenting opinion.").

[19]   *See* Ex. O, Gaitis at 322 (noting that a dissenting opinion "may embolden a losing party to seek vacatur").

[20]   *See id.* ("A dissenting opinion is not part of the final award, which should be signed only by those arbitrators who agree to the reasoning and findings contained in the award.").

Petrobras also suggests that Mr. Gaitis's failure to state any grounds for his assertions comported with his published view that dissents should be done "dispassionately and discretely." Dkt. 66 at 7. But nothing about a dispassionate and discrete approach requires that a dissent be issued with sweeping allegations condemning the entire proceeding without any stated reasons.[21] To the contrary, Petrobras's contention that Mr. Gaitis wanted to be "discrete when not disclosing in the Dissent his views on the other arbitrators' supposed wrongdoing" is entirely at odds with its proposition that *this very silence* should open up the entire proceeding to discovery. *See* Dkt. 66 at 6. Mr. Gaitis's Dissent is not clear evidence of any impropriety and should be entirely disregarded.

3.  **Petrobras's cases do not support a deposition here**

It is a central principle of arbitration that the deliberations of arbitrators are confidential. Petrobras has not cited a single case where the court allowed the losing party to take discovery that would invade the confidential deliberations of the arbitral panel, as Petrobras seeks to do here.[22] Petrobras cites no analogous case for its requested relief, but rather, only a handful of cases where discovery was taken with regard to insufficient disclosures of an arbitrator's conflicted

---

Petrobras also speculates that "Mr. Gaitis has signaled his willingness to provide further information" by citing his book. Dkt. 66 at 7 The section that Mr. Gaitis cited does not reference to post-award discovery. That reference is a full eighteen pages later, in a different chapter, and merely indicates that post-award depositions of arbitrators are sometimes permitted. Shih Decl., Ex. O, Gaitis, at 340. To the extent Mr. Gaitis's book has any bearing on Petrobras's attempt to obtain discovery, it is his citation to the AAA Code of Ethics that is particularly relevant. There, he recognizes that "it is unethical for arbitrators to assist a party by clarifying or interpreting an award after it has been rendered or by aiding a party in its effort to enforce or challenge an award." *Id.* at 339 (citing Canon VI(C)).

[21] Nothing in the book Mr. Gaitis edited, on which his Dissent relies, is to the contrary. *See* Shih Decl., Ex. O, Gaitis, at 322 ("The dissent should be concise, polite, and restrained.").

[22] *See* Shih Decl., Ex. T, Gary B. Born, *Confidentiality in International Arbitration*, INTERNATIONAL COMMERCIAL ARBITRATION (2d ed. 2014) §20.06 ("The confidentiality of the arbitral deliberations is central to the adjudicative character and integrity of the arbitral process.").

relationships. These cases had the following characteristics: (1) discovery was narrowly targeted at undisclosed conflicts alleged to have existed before the arbitral proceedings began; (2) discovery was taken only from the arbitrator alleged to have had the undisclosed conflict; (3) and the topics of discovery did not invade the confidentiality of the arbitral proceedings:

- In *InfoBilling, Inc. v. Transaction Clearing, LLC*, 2013 WL 1501570, at **4, 7 (W.D. Tex. 2013), the judge permitted discovery solely with respect to the respondent's specific allegation that one of the arbitrators (who was also a state-court judge) and opposing counsel had an undisclosed relationship through a PAC that supported the judge's reelection. The court granted a deposition of the arbitrator alleged to have made the deficient disclosures—not, as Petrobras urges here, of another arbitrator alleged to have observed the bias. *Id.*

- *Rodas v. La Madeleine of Texas, Inc.*, 2015 WL 1611780, at *6 (Tex. App.—Dallas 2015, pet. denied) applied Texas state law, not the FAA, and involved specific, substantial allegations of prejudicial, undisclosed conflicts, which allegations had surfaced over the course of three separate court hearings on the motion to vacate. The proposed discovery was "directed at" these alleged conflicts—and, as in *InfoBilling*, toward the arbitrator alleged to have made insufficient disclosures. *Id.*

- In *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 521 (Tex. 2014) (decided under Texas law, not the FAA), the losing party made specific allegations of prejudicial nondisclosure, and the only arbitrator deposed was the arbitrator whose disclosures were alleged to have been deficient. The losing party obtained this discovery only after making specific allegations that before and during the arbitration, the arbitrator had substantial, undisclosed relationships with the lawyers for one of the parties, including potential financial opportunities with the lawyers' law firm. *See Ponderosa Pine Energy, LLC v. Tenaska Energy, Inc.*, 376 S.W.3d 358, 363 (Tex. App.—Dallas 2012), *rev'd* 437 S.W.3d 518.

- *Ometto v. ASA Bioenergy Holding A.G.*, No. 12-cv-1328, Dkts. 9, 29 (S.D.N.Y. 2012), too, involved specific allegations of undisclosed conflicts. Testimony was permitted only as to the arbitrator's undisclosed conflicts, and was taken only from the arbitrator with allegedly deficient disclosures.

Petrobras elsewhere claims that "judges have long recognized that a dissenting arbitrator who does not co-sign the majority award may be deposed." Dkt. 66 at 7. But none of its cases come even close to reaching such a holding. In *Fukaya Trading Co., S.E. v. E. Marine Corp.*, 322 F. Supp. 278, 280 (E.D. La. 1971), the court *denied* a motion to depose the arbitrators after

concluding that all of the issues before it could be resolved on the record. In *Meer Corp. v. Farmella Trading Corp.*, 178 N.Y.S.2d 784, 786 (N.Y. Sup. Ct. 1958), the court, applying New York law, held that it could consider affidavits *voluntarily* submitted by the dissenting arbitrators *and* the majority. In *Continental Bank Supply Company v. International Brotherhood of Bookbinders*, 201 S.W.2d 531, 537-38 (Mo. App. 1947), the court, applying Missouri law, ruled that it could consider testimony from a non-signing arbitrator on the narrow issue of whether another arbitrator, who purported to sign on testifying arbitrator's behalf, actually had authority to do so. The cases on which Petrobras relies in footnotes are equally inapposite.[23] Nothing that Petrobras has cited supports the relief it seeks.

## V. RESERVATION OF RIGHTS

Vantage believes that Petrobras's Motion should be denied in its entirety. But if this Court were inclined to permit a subpoena to issue, then Vantage reserves its rights under Rule 45(d)(3) to seek to quash or modify after the subpoena issues and the specific topics Petrobras seeks for discovery are disclosed.

---

[23] *See, e.g.*, *Grudem Bros. Co. v. Great Western Piping Corp.*, 297 Minn. 313, 318-19 (Minn. 1973) (applying Minnesota law and denying motion to allow arbitrator to testify about alleged mistake in award because "the only purpose of introducing the arbitrator's testimony appears to be to impeach the award itself"); *William C. Vick Constr. Co. v. North Carolina Farm Bureau Fed.,* 123 N.C. App. 97, 102-03 (N.C. Ct. App. 1996) (applying North Carolina law, and on evidence of undisclosed significant business relationships and friendships with one party's counsel, permitting deposition of arbitrator alleged to have made deficient disclosures after that arbitrator pleaded guilty to racketeering, mail fraud, bank fraud); *Carolina-Virginia Fashion Exhibitors, Inc. v. Gunter*, 291 N.C. 208, 214 (N.C. 1976) (applying North Carolina law, and permitting deposition of all three arbitrators where their award was unsupported by evidence of either party); *Central Union Stock Yards Co. v. Uvalde Asphalt Paving Co.*, 87 A. 235, 242 (N.J. Ch. 1913) (pre-FAA case applying New Jersey law, and ruling court could consider arbitrator's voluntary affidavit raising specific allegations of bias by majority).

## VI.     PRAYER FOR RELIEF

For the foregoing reasons, Vantage respectfully requests that this Court deny the Motion in its entirety.

DATED: October 3, 2018

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: _____

Karl Stern
Texas Bar No. 19175665
karlstern@quinnemanuel.com
Charles Eskridge
Texas Bar No. 06666350
charleseskridge@quinnemanuel.com
Christopher D. Porter
Texas Bar No. 24070437
chrisporter@quinnemanuel.com
Kate Kaufmann Shih
Texas Bar No. 24066065
kateshih@quinnemanuel.com
711 Louisiana, Suite 500
Houston, Texas 77002
Telephone: (713) 221–7000
Fax: (713) 221–7200

Tai–Heng Cheng
taihengcheng@quinnemanuel.com
*Admitted Pro Hac Vice*
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone :  (212) 849–7000
Fax :  (212) 849–7100


Edward F. Fernandes
Texas Bar No. 06932700
efernandes@HuntonAK.com
HUNTON ANDREWS KURTH
700 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229-5721
Fax: (713) 229-5750
Paul J. Dobrowski
Texas Bar No. 05927100
pjd@doblaw.com
Danielle N. Andrasek
Texas Bar No. 24045410
dna@doblaw.com
DOBROWSKI LARKIN & JOHNSON LLP
4601 Washington Ave. #300
Houston, Texas 77007

ATTORNEYS FOR PETITIONERS
VANTAGE DEEPWATER COMPANY AND
VANTAGE DEEPWATER DRILLING, INC.

## CERTIFICATE OF SERVICE

A copy of the foregoing motion was served on all counsel of record for the parties via ECF on October 3, 2018.

*/s/ Kate Kaufmann Shih*
Kate Kaufmann Shih