UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

VANTAGE DEEPWATER COMPANY, *et al,*  §
                               §
        Plaintiffs,               §
VS.                                §        CIVIL ACTION NO. 4:18-CV-02246
                               §
PETROBRAS AMERICA INC, *et al,*  §
                               §
        Defendants.            §
                               §

## ORDER

Before the Court are Vantage's Petition to Confirm Arbitration Award (Doc. #1), Petrobras's Opposition (Doc. #46 & 65), and Vantage's Reply (Doc. #69). Also, before the Court are Petrobras's Motion to Vacate (Doc. #34 & 53), Vantage's Opposition (Doc. #69), and Petrobras's Reply (Doc. #77 & 78). Additionally, the Court heard oral argument from the parties and received post-hearing briefing (Doc. #138, Doc. #137 & 139). After reviewing the parties' arguments and applicable legal authority, the Court denies Petrobras's Motion to Vacate and grants Vantage's Petition to Confirm.

## I.    Background

This Petition arises out of the arbitration proceedings between Petitioners Vantage Deepwater Company and Vantage Deepwater Drilling, Inc. (together, "Vantage") and Respondents Petrobras America Inc., Petrobras Venezuela Investments & Services, BV, and Petróleo Brasileiro S.A. – Petrobras (together, "Petrobras"), concerning an Agreement for the Provision of Drilling Services ("DSA"). In addition to the DSA, Vantage and Petrobras entered

into a Form of Payment and Performance Guaranty ("Guaranty"), which guaranteed Petrobras's obligations under the DSA.

The eight-year term of the DSA for the performance of offshore drilling services commenced on December 2, 2012, upon delivery of the ultra-deepwater drilling rig, the Titanium Explorer. On October 27, 2014, Vantage and Petrobras executed the Third Novation and Amendment Agreement to the DSA ("Third Novation") to perform drilling services in the Gulf of Mexico. The parties agreed under the Third Novation that all disputes were to be resolved before the International Centre for Dispute Resolution ("ICDR") of the American Arbitration Association ("AAA") in Houston, Texas. Doc. #1, Ex. D at ¶ 24.2.

On August 31, 2015, Petrobras attempted to terminate the DSA. It was this termination that led Vantage to commence the arbitration proceeding in this case, captioned *Vantage Deepwater Co. et al. v. Petrobras America Inc., et al.*, No. 01-15-0004-8503 (the "Arbitration"), conducted under the auspices of the ICDR of the AAA. Vantage requested that the Arbitration Tribunal (the "Tribunal") award expectancy damages for the remaining portion of the DSA's term wrongfully cancelled by Petrobras. In response, Petrobras argued that the cancellation of the DSA was due to operational failures by Vantage and that the DSA was void or unenforceable for allegedly being procured through bribery.

The Arbitration merits hearing took place in Houston, Texas, from May 16 through June 1, 2017. Pursuant to the Third Novation, the Tribunal consisted of three arbitrators—the Chairperson, Professor William Park ("Chairman Park"), and one arbitrator appointed by each party. *See* Doc. #1 at 6 ¶; Ex. D at ¶ 24.2. Judge Charles N. Brower ("Judge Brower") was

appointed by Vantage and Mr. James Gaitis ("Mr. Gaitis") was appointed by Petrobras.[1]

After the conclusion of the Arbitration, the Tribunal issued its ruling (the "Final Award") on June 29, 2018. Doc. #1, Ex. A. The majority (Chairman Park and Judge Brower) found Petrobras "liable for US$ 615.62 million by reason of early termination of the DSA without justification or payment of the amount due for the rest of the Contract term." *Id.* at ¶ 531. The Final Award further determined that the damages would accrue as of "1 April 2018, to bear interest compounded monthly at a rate of 15.2% and running" through the final payment of the award. *Id.* at ¶ 534. Mr. Gaitis did not join the majority decision and issued a dissent. *Id.*, Ex. E.

On July 6, 2018, following receipt of the Final Award and the dissent, Petrobras applied to the ICDR for the withdrawal of the Final Award and removal of its authors. Doc. #34, Ex. 57. The ICDR denied this request. *Id.*, Ex. 104.

On July 8, 2018, Vantage petitioned this Court under 9 U.S.C. §§ 301–307 ("Chapter 3 of the Federal Arbitration Act") to Confirm the Final Award. *See* Doc. #1, Ex.1. Subsequently, Petrobras filed a Motion to Vacate the Final Award and a Response opposing confirmation of the Final Award. Doc. #34 & Doc. #46. Petrobras argues that vacatur is appropriate on three grounds under 9 U.S.C. § 10(a). Doc. #34 at 24. Furthermore, Petrobras opposes confirmation of the Final Award arguing that it should be set-aside under two provisions of Article V of the Inter-

---

[1] Initially, Vantage's party-appointed arbitrator was David E. Keltner, Esq. However, on July 11, 2016, the ICDR sustained Petrobras's challenge against Mr. Keltner and ordered Vantage to appoint an arbitrator to replace him. Doc. #34, Ex. 45. On August 29, 2018, Judge Brower filed his Notice of Appointment with the ICDR and disclosed potential conflicts. *Id.*, Ex. 44. On August 30, 2016, the ICDR informed the parties of Judge Brower's appointment to replace Mr. Keltner. *Id.*, Ex. 46. On September 14, 2016, Petrobras challenged Judge Brower's appointment alleging he was not "neutral or impartial" due to a "close personal friendship" with a partner at Vantage's counsel's law firm. *Id.*, Ex. 47. On September 30, 2016, the ICDR denied Petrobras's challenge to Judge Brower's appointment. *Id.*, Ex. 49.

American Convention on International Commercial Arbitration of January 30, 1975 (the "Inter-American Convention"). Doc. #46 at 9.

## II.    Motion to Vacate the Final Award

### A.  Legal Standard

The Federal Arbitration Act ("FAA") reflects a national policy favoring arbitration. *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 543 (5th Cir. 2016). "In light of the strong federal policy favoring arbitration, judicial review of an arbitration award is extraordinarily narrow" and "exceedingly deferential." *Id.* at 543–44 (citing *Rain CII Carbon, L.L.C. v. ConocoPhillips Co.*, 674 F.3d 469, 471–72 (5th Cir. 2012)). Courts may vacate an arbitration award "only in very unusual circumstances." *Oxford Health Plans L.L.C. v. Sutter*, 569 U.S. 564, 568 (2013).

Vacatur is available only for the limited statutory reasons outlined in Section 10 of the FAA. 9 U.S.C. § 10; *See Citigroup Global Mkts. Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009) (overruling previous non-statutory grounds for vacatur of an arbitration award and holding that arbitration awards under the FAA may be vacated only for the reasons provided in Section 10). Under Section 10(a), an arbitration award may be vacated: (1) "where the award was procured by corruption, fraud, or undue means;" (2) "where there was evident partiality or corruption in the arbitrators;" (3) "where the arbitrators were guilty of misconduct or of any other misbehavior by which the rights of any party have been prejudiced;" or (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(1–4). The Court does not "conduct a review of an arbitrator's decision on the merits," therefore "arguments concerning the merits are irrelevant" to the Court's "determination of whether there are statutory

4

grounds within Section 10(a) under which the arbitration award should be vacated." *Householder Grp. v. Caughran*, 354 F. App'x 848, 851 (5th Cir. 2009) (citations omitted). An arbitration award "may not be set aside for a mere mistake of fact or law." *Cooper*, 832 F.3d at 546 (quoting *Rain CII Carbon, L.L.C.*, 674 F.3d at 472). "The burden of proof is on the party seeking to vacate the award, and any doubts or uncertainties must be resolved in favor of upholding it." *Id.* at 544 (citing *Brabham v. A.G. Edwards & Sons, Inc.*, 376 F.3d 377, 385 & n.9 (5th Cir. 2004)).

**B. Analysis**

Petrobras moves to Vacate the Final Award based upon 9 U.S.C. § 10(a)(2), (3), and (4). Although Petrobras's briefing discusses at great length the iniquity of the alleged bribery scheme, which it also argued during the Arbitration,[2] Petrobras's arguments concerning the merits of the dispute are irrelevant to the Court's determination of whether there are statutory grounds for vacatur under Section 10(a). *See Caughran*, 354 F. App'x at 851 (citation omitted) ("Section 10(a) does not provide for vacatur of an arbitration award based on the merits of a party's claim" nor does the Court "have the authority to conduct a review of an arbitrator's decision on the merits.").

As to the specific statutory grounds, Petrobras puts forth three arguments for vacatur under 9 U.S.C. § 10(a). Doc. #34 at 9–10. Under Section 10(a)(2), Petrobras argues that Judge Brower "refused to act on serious conflicts of interest" and that his tendentious conduct during the Arbitration proceeding revealed actual bias against Petrobras. *Id.* at 9. Under Section 10(a)(3), Petrobras argues that it was "repeatedly denied the ability to adduce evidence showing that the contract at issue was obtained through bribery," and under 10(a)(4) "that the Majority

---

[2] Petrobras asserts that the DSA was procured through fraud. Specifically alleging that Vantage procured the DSA through bribes distributed as kickbacks to Petrobras officials. *See* Doc. #34 at 11–16; Doc. #46 at 14–17.

rendered an incomplete award, which failed to address a key defense." *Id.*

### 1. 9 U.S.C. § 10(a)(2)

Petrobras contends that Judge Brower exhibited evident partiality which requires vacatur under Section 10(a)(2). Under the FAA, courts may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators." *Cooper*, 832 F.3d at 545 (citing *Bacon*, 562 F.3d at 352 (quoting 9 U.S.C. § 10(a)(2)). "A party can establish evident partiality by demonstrating that the arbitrator failed to disclose relevant facts or that he displayed actual bias during the arbitration." *Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F. Supp. 2d 545, 549 (N.D. Tex. 2006).

Petrobras argues that "Judge Brower's close personal relationship with Vantage's counsel is evidence of partiality necessitating vacatur" and that Judge Brower's conduct during the Arbitration proceedings displayed "actual bias favoring Vantage." Doc. #34 at 30, 35.

### a. Relationship with Vantage's Counsel

When challenging an arbitration award based upon disclosure of an arbitrator's relationship with the parties, it must be shown that the arbitrator had a "significant compromising connection to the parties." *Ameser v. Nordstrom, Inc.*, 442 F. App'x 967, 970 (5th Cir. 2011). "[A]n award may not be vacated because of a trivial or insubstantial prior relationship between the arbitrator and the parties to the proceeding." *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 283 (5th Cir. 2007) (en banc).

"Courts have found that a reasonable impression of partiality is established when the arbitrator has had a direct business or professional relationship with one of the parties to the arbitration." *Weber*, 455 F. Supp. 2d at 552; *see also Olson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 51 F.3d 157, 159 (8th Cir. 1995) (finding a reasonable impression of partiality where

the arbitrator failed to disclose that his employer did a "substantial amount of business with" a party to arbitration proceedings); *Middlesex Mut. Ins. Co. v. Levine*, 675 F.2d 1197, 1202 (11th Cir. 1982) (vacatur was appropriate where the arbitrator had "'repeated' and 'significant' business dealings involving thousands of dollars with one of the parties to the arbitration over a period of four or five years"); *Thomas Kinkade Co. v. White*, 711 F.3d 719, 724 (6th Cir. 2013) ("[w]hen the neutral arbitrator engages in or attempts to engage in mid-arbitration business relationships with non-neutral participants, it jeopardizes what is supposed to be a party-structured dispute resolution process.").

Here, there are no alleged undisclosed business or financial relationships between Judge Brower and Vantage. Rather, upon his appointment to the Tribunal, Judge Brower disclosed that one of his former law clerks from the Iran-United States Claims Tribunal was a partner at the law firm representing Vantage. Doc. #34, Ex. 44. Petrobras timely objected to Judge Brower's appointment and, after due consideration, the ICDR denied Petrobras's challenge to Judge Brower's appointment. *Id.*, Ex. 49.

Petrobras now argues that Judge Brower's friendship with his former law clerk created evident partiality which merits vacatur, suggesting that the relationship created an "appearance of bias." Doc. #34 at 31. However, the standard for assessing evident partiality is not the mere appearance of bias. *See Positive Software Sols.*, 476 F.3d at 285 ("[T]he 'mere appearance' standard would make it easier for a losing party to challenge an arbitration award for nondisclosure than for actual bias . . ." and "hold arbitrators to a higher ethical standard than federal Article III judges"). "Evident partiality is a 'stern standard'" and requires "upholding arbitration awards unless bias is clearly evident in the decisionmakers." *Id.* at 281. Here, Judge Brower's former law clerk was not an advocate representing Vantage during the Arbitration

proceeding. But, even if the former law clerk were an advocate in the Arbitration proceeding, this would not be a significant compromising relationship that establishes clear bias in an arbitrator. It is common knowledge in the legal profession that former law clerks regularly practice before judges for whom they once clerked. *In re Martinez-Catala*, 129 F.3d 213, 221 (1st Cir. 1997). Certainly, the relationship between a judge and his former law clerk is not the type of relationship that would merit vacatur under Section 10(a).

Furthermore, the case that Petrobras relies upon to argue vacatur under Section 10(a)(2), *Thomas Kinkade Co. v. White*, 711 F.3d 719, 724 (6th Cir. 2013), involved a substantial business relationship between the arbitrator and one of the parties. The facts of *Kinkade* are not applicable to this case. Petrobras points to no case, nor has the Court found one, where an arbitration award was vacated for non-business or non-financial relationships (i.e., mere friendships). Doc. #133 at 99. Accordingly, Petrobras has not met its burden of showing that a significant compromising connection exists between Vantage and Judge Brower that would merit vacatur.

### b. Judge Brower's Actions During the Arbitration Proceedings

Petrobras argues that Judge Brower's behavior during the Arbitration proceeding displayed evident partiality amounting to actual bias. The Fifth Circuit "has a very high threshold for a plaintiff to demonstrate evident partiality under 9 U.S.C. § 10(a)." *Ameser*, 442 F. App'x at 970. Arbitral awards are upheld "unless bias was clearly evident in the decisionmakers." *Cooper*, 832 F.3d at 545 (quoting *Positive Software Sols.*, 476 F.3d at 281). Thus, for the arbitration award to be vacated, Petrobras "must produce specific facts from which a reasonable person would have to conclude that the arbitrator was partial to" Vantage. *Id.* (citing *Caughran*, 354 F. App'x. at 852). This includes establishing "specific facts that indicate improper motives on the part of the arbitrator." *Kinkade*, 711 F.3d at 724. The "alleged partiality must be direct, definite,

and capable of demonstration rather than remote, uncertain, or speculative." *Cooper*, 832 F.3d at 545 (citing *Caughran*, 354 F. App'x at 852).

Petrobras alleges that Judge Brower displayed actual bias by "aggressively questioning" Petrobras's witnesses, "displaying hostility toward Petrobras's counsel," being "inattentive and disengaged," adopting the "role of Vantage's advocate," and interrupting Chairman Park's ability to control the hearing. Specifically, Petrobras complains that Judge Brower "aggressively question[ed] a critical Petrobras witness for over 90 minutes and ma[de] belittling comments about Petrobras' counsel under his breath." Doc. #34 at 9. Pertrobras's allegations involve two categories of behavior that Petrobras argues displayed partiality and amounted to actual bias— the way Judge Brower treated counsel for Petrobras and the way Judge Brower treated the witnesses for Petrobras.[3]

### i.  Treatment of Petrobras's Counsel

Petrobras alleges that Judge Brower "displayed hostility towards Petrobras's counsel by continuously making inappropriate, off-the-record comments under his breath and laughing at Petrobras's counsel's questions during cross-examination of Vantage's witnesses." Doc. #34 at 21. However, "an arbitrator's alleged interruptions and interjections of comments or explanations favorable to one party or hostile to the other party to the point where that party's lawyer felt like he was facing an adversary [are] insufficient to show evident partiality." *Lummus Glob. Amazonas S.A. v. Aguaytia Energy del Peru S.R. Ltda.*, 256 F. Supp. 2d 594, 628–29 (S.D. Tex.

---

[3] Upon review of the record, the Court notes that Petrobras did not object during the merits hearing as to the behavior of which Petrobras now complains concerning the alleged "aggressive questioning" of Petrobras witnesses. Petrobras did challenge Judge Brower to the ICDR after the close of the merits hearing by submitting the unofficial Arbitration transcript and identifying the examples of behaviors that Petrobras alleges reveal actual bias. Doc. #34, Ex. 54. The ICDR denied Petrobras's challenge and re-affirmed Judge Brower. *Id.* at Ex. 55.

2002) (quoting *Fort Hill Builders, Inc. v. Nat'l Grange Mut. Ins. Co.*, 866 F.2d 11 (1st Cir. 1989)) (cleaned up).

Because the comments that Judge Brower allegedly made were off-the-record, there is nothing that Petrobras points the Court to as demonstrative of when such comments were made, how often, or in what context. The only reference on the record concerning comments made by Judge Brower was on May 24, 2017, when counsel for Petrobras asked Judge Brower to stop making "snide" and "snarky" comments under his breath and vocalized concerns about Judge Brower's impartiality. Doc. #34, Ex. 8, Tr. 1871:7–19, 1880:5–10.

Petrobras alleges that the "snide" and "snarky" comments were remarks such as, "Ridiculous," "Already talked about," and "Asked and answered." Doc. #34 at 21. Although Petrobras may feel that the comments allegedly made by Judge Brower were abrasive, critical, or rude, these same comments can be viewed as Judge Brower's efforts to move the proceeding along or an expression of his perception that the questions were repetitive or irrelevant. Regardless, "[a]bsent some sort of overt misconduct, a disappointed party's perception of rudeness on the part of an arbitrator is not the sort of 'evident partiality' contemplated by the [FAA] as grounds for vacating an award." *Fairchild & Co. v. Richmond, F. & P. R. Co.*, 516 F. Supp. 1305, 1313 (D.C. Cir. 1981).

### ii. Treatment of Petrobras's Witnesses

Petrobras describes Judge Brower's questioning of Petrobras's witnesses as "aggressive and antagonistic, and clearly aimed at discrediting the witnesses and undermining Petrobras's case" and as "antagonistic interrogations of Petrobras's witnesses, seeking to embarrass them and downplay Vantage's knowledge of bribery." Doc. #34 at 20. Petrobras points to a few

excerpts from the 3,021-page arbitration record to argue that Judge Brower treated Petrobras and Vantage witnesses unequally.[4] Doc. #34 at 20–21.

Much of Petrobras's argument about the unequal treatment of witnesses concerns the questioning of Mr. Padilha, who was the only witness Petrobras called to testify on the issue of bribery. Petrobras argues that Judge Brower "aggressively questioned" Mr. Padilha for over 90 minutes and characterizes his questioning as an "interrogation," as a "hostile cross-examination," as "probing," and aimed at embarrassing him.

The record reveals that all three arbitrators questioned Mr. Padilha and that Judge Brower indicated before his questions began that the "questions from the bench" would be lengthy. Ex. #34, Ex. 6 at Tr. 1507:10–14. There were no objections made about the lengthy questioning of Mr. Padilha during the hearing. *Id.* at Tr. 1508:15–22. Petrobras concedes that arbitrators may ask probing questions of witnesses and test a witness's credibility. Doc. #77 at 8. It should not have been unexpected that the questioning of Petrobras's sole witness on the issue of bribery was lengthy and that his credibility would be an issue addressed by the arbitrator's questions. Furthermore, the Tribunal faced several interruptions during the questioning of Mr. Padilha when Chairman Park and Judge Brower both had to instruct Mr. Padilha repeatedly to stop whispering to his lawyers while the arbitrators were posing their questions to him. Doc. #34, Ex. 6 at Tr. 1537:6–1538:15; Tr. 1568:3–1569:15. As such, the record does not support Petrobras's characterization of Judge Brower's questioning of Petrobras's witnesses as improper or prejudicial.

---

[4] Petrobras describes the questioning of witnesses thusly: Lance Labiche as "degrading" and "extraordinarily critical"; Alvaro Negrao as a "harsh rebuttal" or "line-by-line attack"; and Vantage's expert Judge Stephen Schwebel as a "gratuitous rehabilitation." Doc. #34 at 12–13, 21–22. However, the record does not support Petrobras's characterizations of Judge Brower's questions as being improper or prejudicial as to any of the witnesses.

In addition, Petrobras alleges that Judge Brower was biased because he adopted the "role of Vantage's advocate," was intermittently disengaged from the proceeding, and was aggressive towards the other arbitrators and interrupted Chairman Park's "ability to control the hearing."[5] Doc. #34. at 20–21.

A court in this district analyzed similar allegations of "partisan behavior" concerning an arbitrator in the case *Lummus Glob. Amazonas S.A. v. Aguaytia Energy del Peru S.R. Ltda.*, 256 F. Supp. 2d 594, 628–29 (S.D. Tex. 2002). In *Lummus*, the arbitrator's behavior was described as interrupting witnesses, "usurping" the role of the chair of the panel, and assuming the role of an advocate. *Id.* The court found that the alleged conduct did not amount to evident partiality or provide a basis for vacating the arbitration award. *Id.* Moreover, Petrobras points to no case, nor does the Court find one, where a court has granted vacatur based upon the conduct of an arbitrator for which Petrobras complains. *See* Doc. #133 at 96–97. Petrobras further concedes that no case in the Fifth Circuit has vacated an arbitration award based upon evident partiality. *Id.* at 105–106.

In light of the strict standard of review of arbitration awards, a reasonable person would not have to conclude based on the facts before this Court that Judge Brower was evidently partial toward Vantage. Consequently, the Court is not persuaded that Petrobras has met its burden to demonstrate that the arbitrator's behavior in this case amounted to evident partiality and, as such denies Petrobras's motion to vacate the Final Award under Section 10(a)(2).

---

[5] The only allegation Petrobras makes concerning Judge Brower's impeding Chairman Park's ability to control the hearing was when Judge Brower reminded Chairman Park that a witness who was testifying needed to leave the proceeding early. Doc. #34, Ex. 9 at Tr. 2216:24–2217:2. Furthermore, there is only one disagreement between Judge Brower and Mr. Gaitis that Petrobras construes as aggression toward the other arbitrators. *Id.*, Ex. 7 at Tr. 1822:14–25. The record does not support Petrobras's contention that Judge Brower usurped Chairman Park's role or was aggressive toward the other arbitrators.

**2. 9 U.S.C. § 10(a)(3)**

Petrobras argues that vacatur is merited under Section 10(a)(3) because the Tribunal refused to hear evidence "pertinent and material to the controversy." Doc. #34 at 36. Each of the parties to an arbitration must be given "an adequate opportunity to present its evidence and arguments." *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 300 (5th Cir. 2004) (citations omitted). However, "an arbitrator is not bound to hear all of the evidence tendered by the parties." *Id.* "Every failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an arbitrator's award." *Id.* at 301. "A federal court may vacate an arbitrator's award only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings" such that "the exclusion of evidence deprives a party of a fair hearing." *Id.*

Here, Petrobras alleges that the Tribunal denied its unopposed request to depose former Vantage employees it claims had knowledge of the bribery scheme, precluded a meaningful cross-examination of Douglas Hackett ("Mr. Hackett") (Vantage's witness that testified on the issue of bribery), and refused to accord weight to Vantage's disclosure of its settlement offer to the Securities Exchange Commission ("SEC"). Doc. #34 at 37.

Taken in turn, Petrobras first argues that it was denied a fair hearing because the Tribunal did not order third-party depositions of three former Vantage officers and directors, Mr. Bragg, Mr. O'Leary, and Christopher DeClaire. Doc. #34 at 10; Ex. 53. Petrobras requested these depositions on January 23, 2017. The Tribunal declined to issue the subpoena stating "the Tribunal declines to order depositions, without prejudice to the Parties' right to agree with any or all of the three above-named individuals on a process for depositions on a voluntary basis under agreed procedures." Doc. #34, Ex. 53. Importantly, the Tribunal did not preclude Petrobras from

acquiring voluntary depositions from the witnesses nor did the Tribunal preclude Petrobras from obtaining documents from these persons. Previously, on May 31, 2016, the Tribunal granted Petrobras's request to subpoena documents from Mr. Bragg and Mr. DeClaire. Doc. #34, Ex. 122–23. Furthermore, there is no evidence that Petrobras attempted to call or was precluded from calling any of these individuals to testify at the Arbitration proceeding. Had Petrobras been precluded from calling any witnesses on the issue of bribery, then the argument that the proceeding was unfair would be plausible. *See Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 21 (2d Cir. 1997) (finding that excluding a witness who was the "only person" who could have rebutted an issue before the court not being allowed to testify amounted to fundamental unfairness and misconduct sufficient to vacate the award pursuant to Section 10(a)(3) of the FAA). However, Petrobras presented a host of evidence and called the witness it decided to present on the issue of bribery. Accordingly, the Court finds that Petrobras has not met its burden of showing that the Tribunal's decision not to order subpoenas for depositions of these third-party witnesses deprived Petrobras of a fair hearing.

Petrobras next argues that the Tribunal circumscribed Petrobras's ability to question Vantage's witness, Mr. Hackett, concerning the "bribery scheme to obtain the DSA" and about "[the Weil report] submitted on Vantage's behalf to the DOJ [Department of Justice] and SEC." *Id.* However, the record reveals that Petrobras was given the opportunity to cross-examine Mr. Hackett on the issues it desired, namely "the content of the [Weil] report." Doc. #34, Ex. 2, Tr. 294:24–295:5; Tr. 320:5–9. The only questions Petrobras was prohibited from asking were those that sought to delve into information covered by attorney-client privilege. *Id.* However, "[t]he arbitrator is the judge of the relevance and admissibility of the evidence presented in an arbitration proceeding." *Lummus*, 256 F. Supp. 2d at 617 (citations omitted). So, even if the

Tribunal's ruling on whether information was privileged was an error of law, it would not be a proper reason for vacatur. *See Rainier DSC 1, L.L.C. v. Rainier Capital Mgmt., L.P.*, 828 F.3d 362, 364 (5th Cir. 2016) ("To constitute misconduct requiring vacatur of an award, an error in the arbitrator's determination must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing.").

Lastly, Petrobras complains that the Tribunal did not give weight to Vantage's disclosure of its settlement offer to the SEC. The Court's review is limited to determining whether "the *exclusion of the contested evidence* prevented the parties from receiving a fundamentally fair hearing." *Lummus*, 256 F. Supp. 2d at 618 (emphasis added) (citations omitted). The Tribunal did not refuse to hear nor exclude this evidence. In fact, the Tribunal re-opened the record to admit this evidence at Petrobras's request. Doc. #77 at 20. Whether or not the Tribunal decided to give weight to a particular piece of admitted evidence has no bearing on the issue of whether misconduct occurred meriting vacatur.

On these facts, Petrobras has not shown that the Tribunal denied it an adequate opportunity to present its evidence and arguments. Accordingly, the Court finds that Petrobras did not carry its burden of demonstrating that it was deprived a fair hearing. Therefore, vacatur is not appropriate under Section 10(a)(3).

### 3. 9 U.S.C. § 10(a)(4)

Petrobras argues that the Final Award provided no foundation for the finding of liability against Petróleo Brasileiro S.A. ("Petróleo Brasileiro"), a defect that Petrobras argues requires vacatur as to Petróleo Brasileiro under Section 10(a)(4). Doc. #34 at 10, 47.

Section 10(a)(4) authorizes a federal court to set aside an arbitration award "where the arbitrators exceeded their powers." *BNSF R. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 788 (5th

Cir. 2015). A party seeking relief under that provision bears a heavy burden. "It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." *Oxford Health Plans*, 569 U.S. at 569. Under Section 10(a)(4) the Court looks at "whether the arbitrator's award was so unfounded in reason and fact, so unconnected with the wording and purpose of the [contract] as to manifest an infidelity to the obligation of an arbitrator." *Cooper*, 832 F.3d at 545 (quoting *Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802 (5th Cir. 2013)). "[A]n arbitrator has not exceeded his powers unless he has utterly contorted the evident purpose and intent of the parties—the 'essence' of the contract." *Id.*

Here, Petrobras argues the Tribunal did not issue a reasoned award as to Petróleo Brasileiro. However, the Final Award sets forth the basic reasoning concerning Petróleo Brasileiro as the Guarantor, and that is all that is necessary. *See Leeward Constr. Co., Ltd. v. Am. Univ. of Antigua-Coll. of Med.*, 826 F.3d 634, 640 (2d Cir. 2016) ("A reasoned award sets forth the basic reasoning of the arbitral panel on the central issue or issues raised before it. It need not delve into every argument made by the parties."). The plain language of the Guaranty lists Petróleo Brasileiro as the Guarantor of the DSA. Doc. #1, Ex. C. During the Aribtration, the Tribunal analyzed its jurisdiction over Petróleo Brasileiro, considered the plain language of the Guaranty and the Guaranty's reference to the DSA. Doc. #1, Ex. 3 at ¶¶ 196–205. The Tribunal concluded that it had jurisdiction over Petróleo Brasileiro and found "for the avoidance of doubt, the Tribunal confirms its jurisdiction over Petróleo Brasileiro, which as primary obligor under the DSA and the Guaranty remains responsible for the breaches of the Contract." Doc. #1, Ex. 3 at ¶ 530.

It is clear that the Final Award as to Petróleo Brasileiro gave effect to the intent of the parties with respect to the DSA and the Guaranty. Therefore, the arbitrators did not exceed their

powers by issuing an award against Petróleo Brasileiro. Accordingly, the Court finds that vacatur under Section 10(a)(4) is not appropriate.

### 4. Dissent

Petrobras makes an overall argument that the arbitral process was "fundamentally flawed" under Section 10(a) and that it was the "flawed Arbitration" that "produced the extraordinary Dissent filed" by Mr. Gaitis. Doc. #34 at 10.

In his dissent, Mr. Gaitis stated his "Objection and Dissent is based not only on [his] differing conclusions regarding the merits of the parties' dispute, but also [his] belief and conclusion that the prehearing, hearing, and posthearing processes that led to the issuance of the Final Award [] denied [Petrobras] in this proceeding the fundamental fairness and due process protections meant to be provided to arbitrating parties . . . ." Doc. #1, Ex. 7.[6] Mr. Gaitis provides no reasoning or factual support for his conclusions. Additionally, Petrobras does not point to a case, nor does the Court find one where a dissenting opinion provides grounds for vacatur of the majority's arbitration award. The record does not support the position that Petrobras was denied a fair arbitration or that the Arbitration was fundamentally flawed. And the issuance of a dissent in and of itself does not make vacatur arguments more meritorious.

For the reasons stated, Petrobras has not met its burden of demonstrating that vacatur is warranted under Section 10(a). Therefore, Petrobras's Motion to Vacate the Final Award is denied.

---

[6] As to fairness and due process, the majority stated "the Chairman and Judge Brower each confirms that he has remained independent and impartial throughout the proceedings. The Chairman and Judge Brower each confirms that the pre-hearing, hearing, and post-hearing processes leading to the issuance of this Final Award have been conducted with full respect for all Parties' rights to fundamental fairness and due process . . . ." Doc. #1, Ex. 3 at ¶ 529.

## III.    Confirmation of the Final Award

Vantage submits the Petition to Confirm the Final Award under Chapter 3 of the FAA, 9 U.S.C. §§ 301–307, which provides for the enforcement of the Inter-American Convention over the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention") when "a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the Inter-American Convention and are member States of the Organization of American States." *See* 9 U.S.C. § 305. Because most of the parties to the Final Award are citizens of signatories to the Inter-American Convention (United States and Brazil), the Inter-American Convention applies in this case.[7] The Court "shall confirm" the Final Award under the Inter-American Convention ("Convention") according to 9 U.S.C. § 301 unless a ground to refuse enforcement specified in the Convention applies. *Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG*, 783 F.3d 1010, 1015 (5th Cir. 2015).

Petrobras argues that the Final Award should be refused under two provisions of Article V of the Convention. Under Article V(2)(b), Petrobras argues that the Court should refuse to confirm the Final Award because it would violate public policy to require them to pay damages for amounts that it would have owed Vantage on a contract that was "invalidly obtained by bribery."[8] Doc. #46 at 21. Next, Petrobras argues that the Court should refuse the Final Award under Article V(1)(d) because the Arbitration was not conducted in accordance with the

---

[7] The parties agree that the case law construing the New York Convention's Article V is applicable to proceedings under Article V of the Inter-American Convention and applicable to the Court's decision in this case. *See, e.g., PDV Sweeny, Inc. v. ConocoPhillips Co.*, No. 14-CV-5183, 2015 WL 5144023, at *4 (S.D.N.Y. Sept. 1, 2015).

[8] Although Petrobras contends that the DSA was "invalidly obtained by bribery," Petrobras does not oppose confirmation of the portion of the Final Award "awarding Vantage $6.4 million as a measure of quantum meruit for services already rendered." Doc. #46 at 21.

agreement of the parties. Lastly, Petrobras alleges that the Court does not have subject matter jurisdiction over Petróleo Brasileiro. *Id.* at 24–25.

### A. Legal Standard

Awards falling under the Convention are enforced under the FAA. *Asignacion*, 783 F.3d at 1015. There is an "empathetic federal policy" favoring arbitral dispute resolution and "this policy 'applies with special force in the field of international commerce.'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 617 (1985)). Defenses to enforcement of the Convention are construed narrowly, "to encourage the recognition and enforcement of commercial arbitration agreements in international contracts." *Karaha Bodas*, 364 F.3d at 288 (citations omitted). Under the Convention, "the rulings of the Tribunal interpreting the parties' contract are entitled to deference." *Id.* at 290 (citations omitted). "Absent extraordinary circumstances, a confirming court is not to reconsider an arbitrator's findings." *Id.* at 288 (quoting *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998)). "[A] court reviewing an award under the Convention cannot refuse to enforce the award solely on the ground that the arbitrator may have made a mistake of law or fact." *Asignacion*, 783 F.3d at 1015 (citations omitted). The party opposing the enforcement of the Final Award "on one of the grounds specified in the Convention has the burden of proof." *Id.* at 1015–16.

### B. Analysis

#### 1. Article V(2)(b)

Article V(2)(b) allows a signatory country to refuse enforcement of an arbitration award if "recognition or enforcement of the award would be contrary to the public policy of that country." *Asignacion*, 783 F.3d at 1015 (quoting Convention art. V(2)(b)). The "public policy

defense is to be 'construed narrowly [and] applied only where enforcement would violate the forum state's most basic notions of morality and justice.'" *Id.* at 1016 (quoting *Karaha Bodas*, 364 F.3d at 306). "The standard is high, and infrequently met." *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 938 (D.C. Cir. 2007). "The public policy exception cannot be used to simply question the merits of the underlying award." *Hardy Expl. & Prod. (India), Inc. v. Gov't of India, Ministry of Petroleum & Nat. Gas*, 314 F. Supp. 3d 95, 109 (D.C. Cir. 2018) (citations omitted).

Petrobras argues that the Final Award "dealt with the bribery issue in a manner that was at best both cursory and vague" and that confirming an arbitration award involving a contract procured through bribery would violate the public policy of the United States and should not be confirmed by the Court. Doc. #46 at 19.

Petrobras raised its contention that the contract was void and unenforceable—alleging it was procured through bribery—during the Arbitration. The Tribunal considered the bribery arguments and the claim that the contract was void. *See* Doc. #1, Ex. 3.[9] Despite Petrobras's arguments, the Tribunal found that Petrobras ratified the DSA. *Id.* at ¶ 373, 433. Petrobras cannot now use the public policy defense to question the merits of the Final Award in an attempt to relitigate its bribery claims before this Court. *See Europcar Italia*, 156 F.3d at 315 (stating that if a party "did raise the issue to the arbitrators, it cannot seek to relitigate the matter here").

Rather than performing a reconsideration of the merits of Petrobras's arguments already

---

[9] The Final Award reveals that the Tribunal seriously considered the issue of bribery including the positions of the parties, evidence, findings, conclusions, and re-opened the record to admit additional evidence tendered by Petrobras on the issue of bribery. *See* Doc. #1, Ex. 3 at ¶¶ 255–292; 339–376; 399–403; 406–409; 433–434.

made to the Tribunal, the Court's review under the Convention's public policy defense looks to whether "an arbitrator's contract interpretation violates some explicit public policy." *See Asignacion*, 783 F.3d at 1016. In its Final Award, the Tribunal determined that after Petrobras was aware of the bribery allegations, it ratified the DSA. Doc. #1, Ex. 3 at ¶¶ 288–290. The Court notes that under Texas law, "ratification occurs when a person induced by fraud to enter into an agreement continues to accept benefits under the agreement after he becomes aware of the fraud, or if he conducts himself so as to recognize the agreement as binding." *Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n*, 885 F.2d 266, 270 (5th Cir. 1989) (citations omitted). The Tribunal stated that the "Second Novation and Third Novation, occurring two months after [Petrobras] completed a bribery audit in October 2013, shows [Petrobras was] aware of bribery allegations, and yet continued with the Parties' Agreement." Doc. #1, Ex. 3 ¶ 288. Furthermore, the Tribunal found that "the Second Amendment and First Novation were formed without the involvement of any actors alleged to have been involved in bribery." *Id.* at ¶ 289. Therefore, the Tribunal concluded that Petrobras "knowingly ratified the DSA in its current form, and now find themselves estopped from claiming the Contract is void or voidable." *Id.* at ¶¶ 290, 373, 409. The Tribunal also found that Petrobras did "not carry their burden of demonstrating that Vantage was guilty of bribery on the evidence presented" and "even if [the contract] had been procured by bribery – [it] was ratified by the 'non-bribing' party." Doc. #1, Ex. 3 at ¶¶ 375, 402. Therefore, the question before the Court is whether enforcing a contract alleged to have been procured through bribery—and subsequently ratified by the non-bribing party—would violate public policy.

A court in this district analyzed the public policy defense in a similar case, where the losing party to an arbitration attempted to avoid the arbitration award alleging that the contract

was procured through the payment of "kickbacks to obtain dining services" contracts. *Tamimi Glob. Co. v. Kellogg Brown & Root L.L.C.*, No. CIV.A. H-11-0585, 2011 WL 1157634, at *3 (S.D. Tex. Mar. 24, 2011). The court emphasized that even if proven, the allegations would not support the public policy defense and held that the "[e]nforcement of an arbitration award or other judgment in favor of one party alleged to have committed fraud against the other party allegedly engaged in the same fraudulent misconduct does not violate the most basic notions of morality and justice." *Id.* The court explained that public policy does not favor allowing a party engaged in fraud to attempt to use fraud as a defense to a valid arbitration award in favor of its alleged co-conspirator. *Id.* The same reasoning is applicable here. It does not violate public policy to enforce an arbitration award against parties who were alleged to have mutually engaged in some misconduct during the formation of a contract, particularly when that contract was later ratified.

Accordingly, Petrobras has not met its burden of showing that the Tribunal's contract interpretation violates some explicit public policy. Petrobras's attempt to relitigate the merits of its contract dispute and the general appeal to a public policy against paying and accepting bribes to form contracts does not meet the high burden of showing that enforcement of the actual arbitration decision in this case would violate the most basic notions of morality and justice.

## 2. Article V(1)(d)

Article V(1)(d) permits courts to refuse enforcement of arbitration awards when "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties." Art. V(1)(d). *See Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005). Petrobras alleges that the Court should refuse to confirm the Final Award because "Judge Brower failed to comply with the requirements in the

parties' arbitration agreement that he 'remain neutral, impartial, and independent regarding the dispute and the parties,'" as agreed upon in the Third Novation. Doc. #46 at 22. However, the composition of the Tribunal was in accordance with the agreement of the parties as specified in the Third Novation. Doc. #1, Ex. D at ¶ 24.2. The parties chose the forum for handling their dispute, arbitration. And, the parties agreed to a panel of three arbitrators—one appointed by each party and one by the ICDR. That is what they received. The fact that Petrobras disputes whether Judge Brower was neutral does not transform Petrobras's dislike for one of the arbitrators into a violation of Article V(1)(d).[10] Accordingly, Petrobras's argument that the Court refuse the Final Award under Article V(1)(d) fails.

## IV. Jurisdiction under FSIA

Lastly, Petrobras argues that the Court does not have jurisdiction over Petróleo Brasileiro under the Foreign Sovereign Immunities Act ("FSIA"). However, Petrobras's argument is without merit. The FSIA provides that a foreign state is not immune from the jurisdiction of the courts of the United States in a case to enforce an arbitral award where the confirmation proceeding is governed by treaty. 28 U.S.C. § 1605(a)(6). *See Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57, 62 (D.C. Cir. 2013). This is a confirmation proceeding governed by the Convention to enforce an arbitration award. Therefore, no immunity to suit that might apply under FSIA is applicable to this proceeding. Accordingly, Petrobras's argument that the FSIA deprives the Court of jurisdiction over Petróleo Brasileiro is contrary to governing law.

---

[10] Petrobras makes the same arguments against the Judge Brower to support its Article V(1)(d) argument that it alleged in the Motion for Vacatur under Section 10(a)(2). *See supra* II.B. The Court did not find that the allegations of Petrobras concerning Judge Brower rose to the level of evident partiality and a rehash of these arguments is not appropriate under Article V(1)(d).

## V.    Conclusion

For the foregoing reasons, Vantage's Petition to Confirm the Arbitration Award is GRANTED. Petrobras's Motion to Vacate the Award is DENIED.

It is so ORDERED.

DATED this May 17, 2019

_____
The Honorable Alfred H. Bennett
United States District Judge